UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ -X

CHATWAL HOTELS & RESORTS LLC,                          :

                                    Plaintiff,          :       14 Civ. 8679 (CM)(HBP)

         - against -                                    :

THE DOLLYWOOD COMPANY, HERSCHEND                       :
FAMILY ENTERTAINMENT CORPORATION,
and DOLLY PARTON PRODUCTIONS, INC.                     :

                                    Defendants.    :
‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ ‐ -X


**DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS**

John G. McCarthy
SMITH, GAMBRELL & RUSSELL, LLP
1301 Avenue of the Americas, 21st Floor
New York, NY 10019
(212) 907-9700

J. Rodgers Lunsford III (*pro hac vice* to be filed)
SMITH, GAMBRELL & RUSSELL, LLP
Promenade, Suite 3100
1230 Peachtree St., N.E.
Atlanta, GA  30309
(404) 815-3628

*Attorneys for Defendants The Dollywood Company,
Herschend Family Entertainment Corporation,
and Dolly Parton Productions, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... *ii*

I.  INTRODUCTION ...................................................................................................... 1

II. STATEMENT OF FACTS ......................................................................................... 1

    A.  Background Facts on Defendants ..................................................................... 1

    B.  Background Facts About This Trademark Dispute ......................................... 5

III. ARGUMENT AND CITATION OF AUTHORITY ................................................. 7

    A.  Defendants Are Not Subject to General Jurisdiction in this Court ................ 8

    B.  Defendants Are Not Subject to Specific Jurisdiction Under the
        New York Long-Arm Statute ......................................................................... 10

        1.  Defendants Have Not Committed a Tortious Act in New York ......... 11

        2.  Defendants Have Not Transacted Business in New York ................... 11

        3.  Defendants Are Not Subject to Personal Jurisdiction Under
            CPLR 302(a)(3) ................................................................................. 17

    C.  Assertion of Jurisdiction Over Defendants in New York Would Offend
        Due Process .................................................................................................... 22

IV. CONCLUSION ........................................................................................................ 25

# TABLE OF AUTHORITIES

## CASES

*A.W.L.I Grp., Inc. v. Amber Freight Shipping Lines,*
    828 F. Supp. 2d 557 (E.D.N.Y. 2011) ...................................................15, 20, 23

*Bensusan Rest. Corp. v. King,*
    937 F. Supp. 295 (S.D.N.Y. 1996) .........................................................20, 23

*Buccellati Holding Italia SPA v. Laura Buccellati, LLC,*
    935 F. Supp. 2d 615 (S.D.N.Y. 2013).........................................................16, 20

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985).....................................................................................12

*Citigroup Inc. v. City Holding Co.,*
    97 F. Supp. 2d 549 (S.D.N.Y. 2000).........................................................10, 11

*Cutco Indus., Inc. v. Naughton,*
    806 F.2d 361 (2d Cir. 1986).........................................................................10

*Daimler AG v. Bauman,*
    134 S. Ct. 746 (2014)...............................................................................8, 9

*DH Servs., LLC v. Positive Impact, Inc.,*
    2014 WL 496875 (S.D.N.Y. Feb. 5, 2014).........................................14, 15, 18

*Falik v. Smith,*
    884 F. Supp. 862 (S.D.N.Y. 1995) ...............................................................10

*Forties B LLC v. Am. West Satellite, Inc.,*
    725 F. Supp. 2d 428 (S.D.N.Y. 2010) ...........................................................20

*Glazier Grp., Inc. v. Mandalay Corp.,*
    2007 WL 2021762 (S.D. Tex. July 11, 2007)................................................24

*Gucci Am., Inc. v. Weixing Li,*
    768 F.3d 122 (2d Cir. 2014) ......................................................................7, 8

*Int'l Shoe Co. v. Washington,*
    326 U.S. 310, 66 S. Ct. 154 (1945) .................................................................7

*ISI Brands, Inc. v. KCC Int'l, Inc.,*
    458 F. Supp. 2d 81 (E.D.N.Y. 2006) .........................................................15, 24

*John Wiley & Sons, Inc. v. Treeakarabenjakul,*
    2009 WL 1766003 (S.D.N.Y. June 18, 2009) ................................................7, 10

*Pandaw Am., Inc. v. Pandaw Cruises India Pvt. Ltd.,*
    842 F. Supp. 2d 1303 (D. Colo. 2012)..............................................................24

*Penguin Grp. (USA) Inc. v. Am. Buddha,*
    640 F.3d 497 (2d Cir. 2011)............................................................................11

*Pitbull Prods., Inc. v. Universal Netmedia, Inc.,*
    2008 WL 1700196 (S.D.N.Y. April 4, 2008) ......................................15, 20, 22

*Porina v. Marward Shipping Co., Ltd.,*
    521 F.3d 122 (2d Cir. 2008).............................................................................22

*Richtone Design Grp., LLC v. Live Art, Inc.,*
    2013 WL 5904975 (S.D.N.Y. Nov. 4, 2013)................................................20, 22

*Royalty Network Inc. v. Dishant.com, LLC,*
    638 F. Supp. 2d 410 (S.D.N.Y. 2009)...................................11, 12, 13, 16, 19

*Walden v. Fiore,*
    134 S. Ct. 1115 (2014) ...................................................................................10

*Weiss v. Barc, Inc.,*
    2013 WL 2355509 (S.D.N.Y. May 29, 2013) ......................................9, 13, 14

*Yash Raj Films (USA) Inc. v. Dishant.com LLC,*
    2009 WL 4891764 (E.D.N.Y. Dec. 15, 2009) ...........................................15, 19

## STATUTES AND RULES

Fed. R. Civ. P. 12.................................................................................................1

CPLR 302.........................................................................1, 10-12, 14-18, 21

# I.    INTRODUCTION

Plaintiff Chatwal Hotels & Resorts LLC ("Plaintiff") has brought an action against the joint venture The Dollywood Company ("Dollywood JV") based on its adoption and use of the name and mark "Dollywood's DreamMore Resort and butterfly design" for a resort that will be adjacent to the well-known Dollywood theme park in Pigeon Forge, Tennessee. The resort is not scheduled to open until Summer 2015. Although Dollywood JV first announced its planned resort in August 2013, Plaintiff did not protest the resort name until it filed this lawsuit on October 30, 2014. Plaintiff contends that use of "Dollywood's DreamMore Resort" as the name of the resort infringes Plaintiff's alleged rights in the marks "Dream" and "The Dream Hotel" for hotel services. Plaintiff's present United States hotels are in New York City and Miami Beach.

Plaintiff also named two other entities as defendants: Dolly Parton Productions, Inc., a California corporation with a principal place of business in Tennessee ("DPP"), and Herschend Family Entertainment Corporation ("Herschend"), a Missouri corporation, with a principal place of business in Georgia. DPP is a founding and current member of Dollywood JV. Herschend has not been a member of Dollywood JV since December 2013. As shown below, no Defendant has contacts with New York sufficient to meet the requirements of the New York long-arm statute, CPLR 302(a). In addition, exercise of personal jurisdiction over Defendants would violate due process. As a result, this case should be dismissed pursuant to Rule 12(b)(2).

## II.    STATEMENT OF FACTS

### A.    Background Facts On Defendants

Dollywood JV is a joint venture formed in 1987 in accordance with the laws of Tennessee by agreement between DPP and Herschend (then known as Silver Dollar City, Inc.). The purpose of the joint venture was and continues to be to own and operate a public theme and

amusement park located in the vicinity of Pigeon Forge, Tennessee, known as "Dollywood." Declaration of Andrew Wexler ("Wexler Decl.") ¶ 4.

Since 1986, the park has gone through significant expansions so that it now occupies nearly 200 acres, and includes a separate water park (called "Dollywood's Splash Country"), numerous restaurants, numerous theaters and other venues with Broadway-style shows, roller coasters and other rides, craftsmen, shops, and other forms of entertainment. Declaration of Craig Ross ("Ross Decl.") ¶ 5. Dollywood has more than two million visitors each year and is ranked in the Top 50 most attended theme parks worldwide. In 2014, Dollywood was named a top three theme park by *USA Today*, and the park has received extensive awards and recognition worldwide. *Id.* ¶ 6.

Visitors to Dollywood theme park primarily originate from the southeastern and midwestern regions of the United States. However, Dollywood draws visitors from throughout the United States and internationally. Dollywood JV promotes the park on its dollywood.com website and in television advertisements targeted to major markets, such as Knoxville and Nashville, Tennessee, and Atlanta, Georgia, but rarely in magazines. No television advertisements have targeted New York. *Id.*

From 2013 to the present, Dollywood JV's total ticket revenues have exceeded $145 million. Sales of tickets to New York customers during such period totaled $287,901.00, or less than 0.2% of total ticket sales. In addition to purchasing tickets at the park, customers can purchase tickets for admission to the park on the dollywood.com website. In 2013, Dollywood JV sold $19,104.000 in Dollywood tickets on line, including $37,900 in tickets on line to residents in New York – approximately 0.19% of Dollywood's total online ticket sales. *Id.* ¶ 7.

In 2010, Dollywood JV began offering and selling Dollywood brand merchandise through a licensed vendor on the website dollywoodmerchandise.com. That license terminated in September 2013, and Dollywood JV has not sold or authorized the sale of any Dollywood brand products over the Internet since that time. Between 2010 and September 2013, Dollywood JV's licensed vendor sold $23,872.00 in Dollywood brand products through the dollywoodmerchandise.com website, a very small percentage of which sales were to customers in New York. *Id.* ¶ 8.

Dollywood JV has never owned or leased property in New York, has never had employees, an office, a bank account, a mailing address or telephone number in New York, has never paid taxes in New York, and has never qualified to do business in New York. Ross Decl. ¶ 18. The only contacts between Dollywood JV and New York are the national advertising for the theme park through the dollywood.com website that can be accessed by New York residents, the small percentage of visitors to Dollywood that come from New York, some of whom purchase their admission tickets while in New York over the dollywood.com website, and the past sales of licensed Dollywood brand merchandise to New York residents through the now discontinued dollywoodmerchandise.com website. *Id.* ¶ 9.

From 1987 through December 2013, Herschend owned the majority share of Dollywood JV. Herschend is a Missouri corporation with a principal place of business in Norcross, Georgia. Wexler Decl. ¶ 5. Herschend has never owned or leased property in New York, has never had any employees in New York except for one short-term employee and employees loaned to another entity, has never had an office, a bank account, a mailing address, or telephone number in New York, and has never sold any products in New York. *Id.* ¶ 7.

Until December 2013, Herschend controlled the day-to-day operations of Dollywood JV. In December 2013, Herschend assigned all of its right, title and interest in Dollywood JV to DW Holding Company, LLC ("DW Holding"). *Id.* DW Holding is a Missouri limited liability company with a principal place of business in Norcross, Georgia. Declaration of Rhonda Youngblood ("Youngblood Decl.") ¶ 3. Since Herschend transferred all of its interest in the Dollywood JV to DW Holding, Herschend has had no involvement in the day-to-day operations of Dollywood, including use of the trademarks adopted and used by Dollywood JV. *Id.* ¶ 4; Wexler Decl. ¶ 5. DW Holding has never owned or leased property in New York, has never had employees, an office, a mail address, bank account, or telephone number in New York, has never paid taxes in New York, and has never qualified to transact business in New York. DW Holding also has never operated a website or sold any goods or services in New York. Youngblood Decl. ¶¶ 5-6.

DPP owns the minority share of Dollywood JV. DPP is a California corporation with a principal place of business in Tennessee. DPP owns no property in New York, has no employees in New York, has no offices in New York, has no mailing address or telephone number in New York, has no bank accounts in New York, and has never qualified to transact business in New York. DPP also has never owned or operated a website, has never sold any products in New York. DPP does not manage the day-to-day operations of the Dollywood JV. Declaration of Ted C. Miller ("Miller Decl.") ¶¶ 3-6.

Counsel for DPP has contracted from their offices in California with companies located in New York. However, neither counsel nor an agent for nor any employee of DPP traveled to New York to negotiate or execute such contracts. These include contracts relating to theatrical productions based on the 1980 movie *9 to 5*, and a contract relating to Ms. Parton's role in the

movie *Joyful Noise*. DPP leased an apartment for Ms. Parton in New York in 2009 in connection with her activities for the *9 to 5* musical. Ms. Parton has also appeared as a guest on talk shows, performed in concerts, and made publicity appearances in support of the *9 to 5* musical in New York. None of these contracts and appearances by Ms. Parton in New York have any connection to Dollywood JV, the Dollywood theme park, or Dollywood's DreamMore Resort. *Id.* ¶ 7.

**B.      Background Facts About This Trademark Dispute**

In August 2013, Dollywood JV announced plans to build and open a resort adjacent to the Dollywood park that would be called "Dollywood's DreamMore Resort." Dollywood JV selected the term "DreamMore" to use as part of the resort name because the phrase "Dream More" has special significance to Ms. Parton, who uses the phrase "Dream more, Learn more, Care more and Be more" as her personal philosophy of life and as the inspirational purpose of her foundation, The Dollywood Foundation, which was created in 1988. In 2012, Ms. Parton published a memoir, entitled *Dream More: Celebrate the Dreamer in You.* Ross Decl. ¶ 10. When Dollywood JV selected the name "Dollywood's DreamMore Resort," Dollywood JV had general knowledge that several different entities used the term "dream" in connection with hotel services. However, Dollywood JV did not have knowledge of Plaintiff, Plaintiff's hotels in New York, or Plaintiff's claimed rights in the term "Dream" for hotel services. In particular, Dollywood JV believed that because of the fame of the Dollywood brand, use of the name Dollywood's DreamMore Resort for a resort located adjacent to the Dollywood theme park in Pigeon Forge, Tennessee would not conflict with the name of any other hotel, motel, inn or resort. Since the filing of this lawsuit, Dollywood JV has become aware of a large number of users of the term "dream" in the names of hotels, motels, inns, hostels, lodges, resorts, cruises, and related overnight lodging and travel services. *Id.* ¶ 11.

In connection with its plans to build and open Dollywood's DreamMore Resort, Dollywood JV caused an employee of Herschend to register the domain name "dreammoreresort.com" on August 13, 2013, and instructed its counsel to file an intent-to-use application to register the DOLLYWOOD'S DREAMMORE RESORT mark in the United States Patent and Trademark Office ("USPTO"). The website was created in Atlanta, Georgia, and is technically maintained in Atlanta and substantively maintained in Pigeon Forge, Tennessee. Dollywood JV issued a press release on August 21, 2013, announcing the resort and its planned opening in Summer 2015. Ross Decl. ¶ 12.

The dreammoreresort.com website was activated in August 2013. The website describes the planned resort, the various amenities to be offered at the resort, and includes a video presentation about the resort. *Id.* ¶ 13. The website primarily serves as a way for visitors to learn about the future resort. No one can make reservations on the website to stay at Dollywood's DreamMore Resort. Moreover, no one can purchase any goods or services of any kind on the website. The website does allow interested website visitors to sign up for the "Founders Club." Individuals who register to be in the Founders Club will receive the latest news about the resort and special offers and privileges at the resort, as well as information and offers relating to the Dollywood theme park. There are no dues or fees required to sign up for the "Founders Club." Of the more than 30,000 people who have joined the Founders Club to date, approximately 300, or less than 1.0%, are residents of New York.[1] *Id.* ¶ 14.

---

[1] In November 2014, ***after*** the complaint was filed, Dollywood JV offered the first one thousand Founders Club members to respond to an opportunity to purchase gift certificates and an overnight stay in the resort for $100.00. Those first 1,000 members received a code to make a one-night reservation once the resort opens. Ross Decl. ¶ 15. Only one Founders Club member who made a purchase is a New York resident. Defendants will file, if necessary, a supplemental declaration relating to the one New York resident who made a purchase.

Since announcing the planned Dollywood's DreamMore Resort in August 2013, Dollywood JV has continued with its plans to open the resort in Summer 2015. The Dollywood JV has also continued to prosecute its application to register DOLLYWOOD'S DREAMMORE RESORT, and the application will be published for opposition on January 20, 2015. The USPTO also expressly found that there were no marks that conflicted with DOLLYWOOD'S DREAMMORE RESORT in a priority action issued in *November 2013*. *Id.* ¶ 17. On October 30, 2014, Plaintiff filed this lawsuit against Dollywood JV, its current minority owner DPP, and its former member, Herschend.

### III.   ARGUMENT AND CITATION OF AUTHORITY

For a court to exercise jurisdiction over a defendant, that defendant must have sufficient "minimum contacts" with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154 (1945) (internal citation omitted). If a defendant is not subject to personal jurisdiction in the court where an action has been brought, the claims against such defendant must be dismissed. *E.g., John Wiley & Sons, Inc. v. Treeakarabenjakul*, 2009 WL 1766003, at *3 (S.D.N.Y. June 18, 2009).

Since *Int'l Shoe*, two types of personal jurisdiction have developed: general jurisdiction and specific jurisdiction. If a party is subject to general jurisdiction in a particular court, the court can "hear 'any and all claims'" brought against such party. *Gucci America, Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014) (citation omitted). If a party is subject to specific jurisdiction, then the court only has authority to hear "issues that 'aris[e] out of or relat[e] to the [entity's] contacts with the forum." *Id.* (internal citation omitted). Here, no Defendants are subject either to general jurisdiction or specific jurisdiction in New York, and to assert

jurisdiction over any Defendant in New York for Plaintiff's infringement and unfair competition claims would violate due process.

## A.  Defendants Are Not Subject to General Jurisdiction in this Court.

The Supreme Court recently addressed the requirements for establishing general jurisdiction over a corporation in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014). In *Daimler*, the Court held that a foreign corporation can only be subject to general jurisdiction in a forum where a corporation is "'fairly regarded as at home.'" *Id.* at 760. A corporation is regarded at home where it is incorporated and where it has a principal place of business.[2]

The Second Circuit considered the *Daimler* decision in *Gucci*. The Second Circuit found that although a bank had a local branch office in New York, the bank was not subject to general jurisdiction in New York because the bank was not incorporated in New York and did not have its principal place of business in New York. The court determined that the bank's contact with the state was not "so continuous and systematic as to render [the bank] essentially at home in the forum." As a result, the bank was not subject to general jurisdiction in New York. *Gucci*, 768 F.3d at 135.

Under *Daimler* and as explained by *Gucci*, Defendants here are not subject to general jurisdiction in New York. Dollywood JV was formed by agreement under Tennessee law and has a principal place of business in Tennessee. Ross Decl. ¶ 3. Moreover, Dollywood JV has no contacts that are "so continuous and systematic" that it would be regarded as being "at home" in New York. Dollywood JV's only contacts with New York are through its national advertising and sales related to Dollywood Park in Tennessee. Dollywood JV has no contacts specifically

---

[2] The Court declined, however, to foreclose the possibility that in an exceptional case, a court may exercise jurisdiction if a corporation's operations in a forum state are "so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 761 n. 19.

directed at New York. *Id.* ¶ 9. Assertion of general jurisdiction based on an entity's national advertising and sales would mean that *every* national company would be subject to general jurisdiction in *every* state – a proposition soundly rejected by the courts. *See, e.g., Weiss v. Barc, Inc.*, 2013 WL 2355509, at *2 (S.D.N.Y. May 9, 2013); *see also Daimler*, at 762 n. 20 ("A corporation that operates in many places can scarcely be deemed at home in all of them.").

With regard to Herschend, it is a Missouri corporation with a principal office in Georgia. Wexler ¶ 3. It has no continuous and systematic contacts with New York that would meet the stringent *Daimler* standard. Herschend also has not been a member of Dollywood JV since December 30, 2013, and has had no involvement over Dollywood JV's operations or its use of the Dollywood's DreamMore Resort mark since 2013. *Id.* ¶ 5. Thus, Herschend is not even a proper party to this lawsuit.

Likewise, DPP is a California corporation with a principal office in Tennessee. Miller Decl. ¶ 3. It also has no continuous and systematic contacts with New York. DPP's only contacts with New York relate to theatrical productions based on the 1980 film *9 to 5*, leasing an apartment for Ms. Parton in New York in 2009 in connection with her activities for the *9 to 5* production, and Ms. Parton's role in the movie *Joyful Noise*, and such contacts have no connection to the activities of Dollywood JV or its use of the Dollywood's DreamMore Resort mark at issue in this case. Miller Decl. ¶ 7. Such contacts are not so continuous and systematic as to render DPP "at home" in New York.

Finally, even if this Court *could* assert general jurisdiction over Herschend or DPP based on their contacts with New York, there would be no basis for asserting general jurisdiction over Dollywood JV – the entity that actually owns and uses the allegedly infringing mark that is the subject matter of this lawsuit and the only entity that is a necessary party to this litigation. The

contacts of one defendant cannot be imputed to another defendant unless the first defendant was acting as the *agent* of the second defendant – under the second defendant's control and with its consent – when making such contacts. *E.g*, *Cutco Indus., Inc. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986); *Falik v. Smith*, 884 F. Supp. 862, 866 (S.D.N.Y. 1995). Because Herschend and DPP's New York contacts have no connection to the business of Dollywood JV, such contacts undisputedly were not under Dollywood JV's control or with its consent. Thus, such contacts cannot be imputed to Dollywood JV.

**B.    Defendants Are Not Subject to Specific Jurisdiction under the New York Long-Arm Statute.**

Because Defendants are not subject to general jurisdiction in New York, Plaintiff must show that Defendants are subject to specific jurisdiction based on the New York long-arm statute, CPLR 302(a). *See, e.g.*, *John Wiley*, 2009 WL 1766003, at *3. In addition, Plaintiff must show that Plaintiff's claims *arise from* Defendants' contacts with New York. *E.g.*, *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 564 (S.D.N.Y. 2000); *Walden v. Fiore*, 134 S. Ct. 1115 (2014) (contact must be directed at forum itself, not just plaintiff).

Plaintiff only makes one allegation regarding jurisdiction in its Complaint: "Defendants have committed acts of trademark infringement and unfair competition in the nature of trademark infringement in this District and elsewhere in commerce." Compl. ¶ 5. This allegation appears to assert jurisdiction based on CPLR 302(a)(2), under which a foreign defendant is subject to specific jurisdiction when the defendant "commits a tortious act within the state." As shown below, Defendants have not committed a tortious act in New York.

1. **Defendants Have Not Committed a Tortious Act in New York.**

According to Plaintiff's Complaint, Defendants' only alleged use of the Dollywood's DreamMore Resort mark is on the dreammoreresort.com website. Compl. ¶¶ 14, 18, 26. However, "in the case of web sites displaying infringing marks, the tort is deemed to be committed where the web site is created and/or maintained." *Citigroup*, 97 F. Supp. 2d 567; *see Penguin Grp. (USA) Inc. v. Am. Buddha*, 640 F.3d 497, 500 (2d Cir. 2011). The dreammoreresort.com website was created in Georgia, and is maintained in Georgia and Tennessee. Ross Decl. ¶ 12. Therefore, Dollywood JV's use of the Dollywood's DreamMore Resort mark on its website does not constitute a tortious act occurring *in* New York, and CPLR 302(a)(2) does not apply.

Because Plaintiff has made no allegation regarding any other basis for asserting personal jurisdiction over Defendants, this should end the inquiry, and Defendants' Motion to Dismiss should be granted. However, even if Plaintiff's allegations could arguably be read to state a broader jurisdictional basis, Defendants are not subject to jurisdiction in this Court under any applicable prong of the New York long-arm statute.

2. **Defendants Have Not Transacted Business in New York.**

CPLR 302(a)(1) provides for jurisdiction over a defendant who "transacts business" in New York. Even if Plaintiff's jurisdictional allegations could be construed to allege a "transacting business" basis, Defendants do not meet this prong of the long-arm statute.

To "transact business" in New York, the party must "purposefully avail[] itself of the privilege of conducting activities" within such state. *Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 417-18 (S.D.N.Y. 2009). In *Royalty Network*, the court stated that purposeful availment "requires more than 'random, fortuitous, or attenuated contacts.'" *Id.* at

418 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)). Rather, acts that constitute purposeful availment are "those with which the defendant, through volitional acts, avails itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws.'" *Id.* (internal citation omitted).

Here, the only conduct of Defendants that both (1) relates to Plaintiff's trademark infringement and unfair competition claims and (2) has any connection to New York is Defendants' use of the Dollywood's DreamMore Resort mark on the dreammoreresort.com website to promote the resort that Dollywood plans to open in Pigeon Forge, Tennessee, in Summer 2015. Whether operation of a website constitutes "transacting business" under the long-arm statute depends on the nature of the website.

The mere fact that a website is accessible to users in New York, ***without more***, does not constitute "transacting business" under CPLR 302(a)(1). *Royalty Network,* 638 F. Supp. 2d at 418. In determining whether a website provides the "something more" required for personal jurisdiction, the courts have developed a spectrum of interactivity for websites. At one end of the spectrum are "passive" websites. "Passive" websites are those that only provide ***information*** to users. At the other end are "interactive" websites. "Interactive" websites are those that provide means for the user to purchase goods or services from the defendant. Because "interactive" websites involve acts that are purposefully directed to residents in other states (through making sales of goods or services to residents of such state), "interactive" websites are usually sufficient to establish specific jurisdiction over a claim that arises from such website activity. In the middle are websites that are less interactive. "Middle-ground" websites permit the exchange of information between defendant and users in other states, but do not provide a means to purchase goods or services. Such websites can form the basis for specific jurisdiction

depending on the nature of the information being exchanged. *Royalty Network*, 638 F. Supp. 2d at 418-19.

At most, the dreammoreresort.com website falls within the middle ground. On the website, Dollywood JV is simply promoting a resort under the Dollywood's DreamMore Resort mark that is not scheduled to open until Summer 2015. The only "interactive" aspect of the website is the opportunity for a user to register to join the "Founders Club." To join, a user provides a name and contact information, and Dollywood JV enters the information into its "Founders Club" database. Once the resort opens, members of the "Founders Club" will have access to certain discounts at the Resort and can receive special packages and exclusive event offers. Users cannot make reservations to stay at the resort and cannot make any purchases of any kind on the website. In addition, membership in the "Founders Club" is free. As a result, operation of the dreammoreresort.com website does not constitute "transacting business" under CPLR 302(a)(1).

This Court considered a similar "middle-ground" website in *Weiss*, and found that operation of such website did not constitute "transacting business" in New York. In *Weiss*, the plaintiff, a New York resident, owned the mark BARK for online social media networking services. The defendant, a California resident, began operating a social networking site under the name "BARC," and the plaintiff sued the defendant in New York for trademark infringement. The court found that the defendant's website was a "middle-ground" website. Users could register on the site, and share information, links, and communications with others. Thus, the site was not limited merely to making information available to users of the site. *Weiss*, 2013 WL 2355509, at *1-*3.

The court determined that the website was not sufficient to establish specific jurisdiction for trademark infringement in New York under CPLR 302(a)(1) (even though there was evidence that some users in New York had registered as users of the defendant's site):

> Courts have found that where a website is directed at the entire United States with no evidence that defendants manifested the intent to specifically target New York or avail themselves of the benefits of New York law, there is no personal jurisdiction under C.P.L.R. § 302(a)(1). The "mere solicitation of business within the state does not constitute the transaction of business within the state absent some other New York-directed activities." . . . [The operation of defendant's website] is also not conducting traditional business over the internet because it is not selling goods or services or charging membership fees to registered users. The only connection [defendant's] website has to New York is it is available to its residents with an internet connection and some New York residents have registered through the website. However, these allegations do not rise to the level of alleging that [defendant] has purposefully and knowingly entered into or sought transactions with New York residents.

*Id.* at *3-*4. Thus, defendant's "middle-ground" website did not constitute "transacting business" under CPLR 302(a)(1) of the long-arm statute. *Id.*

Likewise, in *DH Servs., LLC v. Positive Impact*, LLC, 2014 WL 496875 (S.D.N.Y. Feb. 5, 2014), the court held that operation of a "middle-ground" website did not constitute "transacting business" in New York. The plaintiff, a New York resident, used the marks MISTER and MR for its online dating and networking services. The plaintiff also acquired rights in the mark MR. PARTY for an annual event hosted in California that drew nationwide attendees. The defendant, a Georgia resident, used the mark M.I.S.T.E.R. for its educational and counseling services for those affected by HIV. The defendant used its M.I.S.T.E.R. mark on its Facebook page to identify and promote fundraising events being held at bars and restaurants in Atlanta. There was evidence that some of these events were attended by New York residents who had posted their attendance plans on the defendant's Facebook page. *Id.* at *1, *5.

The court found that the defendant's operation of the Facebook page did not constitute "transacting business" in New York:

> A Facebook user's ability to indicate that he or she will be attending an event certainly makes the website more interactive – and undoubtedly permits Defendant to obtain additional information not available in traditional forms of advertising – but still does not amount to the "transaction" of business. Nowhere does Defendant's evidence suggest that users could purchase tickets to the events or exchange money electronically. Instead, a New York user would be required to travel to Atlanta to attend the event, and only the purchases he or she made in Atlanta would benefit Defendant. Personal jurisdiction is not appropriate in these circumstances.

*Id.* at *6; *see also A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 568 (E.D.N.Y. 2011) (operation of website did not constitute "transacting business" under CPLR 302(a)(1) because "a website is still considered passive and insufficient to confer jurisdiction where, as here, the only purported 'exchange of information' available on the website is a direct link allowing a user to contact the seller and does not allow for any part of a transaction to occur online"); *ISI Brands, Inc. v. KCC Int'l, Inc.*, 458 F. Supp. 2d 81 (E.D.N.Y. 2006) (because there was no evidence that anyone in New York (other than plaintiff and its counsel) had placed orders of allegedly infringing products through defendant's website, defendant did not transact business in New York through the site); *Pitbull Prods., Inc. v. Universal Media, Inc.*, 2008 WL 1700196 (S.D.N.Y. April 4, 2008) (operation of a nationally accessible website consisting of blog and message boards that allowed users to post messages and download allegedly infringing videos did not constitute "transacting business" in New York because "'[m]erely posting information on a website is an inherently passive act, which 'has been analogized to an advertisement in a nationally-available magazine or newspaper, and does not without more justify the exercise of jurisdiction over the defendant.'"") (internal citations omitted); *Yash Raj Films (USA) Inc. v. Dishant.com LLC*, 2009 WL 4891764, at *6 (E.D.N.Y. Dec. 15, 2009) (operation of website

from which allegedly infringing ringtones could be purchased did not constitute transacting business in New York where website was equally capable of reaching customers in New York and other states such that defendant was not actively seeking commercial activity in New York); *Buccellati Holding Italia SPA v. Laura Buccellati, LLC*, 935 F. Supp. 2d 615 (S.D.N.Y. 2013) (Florida defendant who promoted allegedly infringing products on its nationally accessible website did not transact business in New York because the only sale of allegedly infringing product over website was to plaintiff).

That Defendants have other contacts with New York does not change the analysis because Defendants' other contacts are not related to Plaintiff's claim that use of the Dollywood's DreamMore Resort mark infringes Plaintiff's trademark rights. That Dollywood JV has sold admission tickets to Dollywood to New York residents through its dollywood.com website has no connection to Plaintiff's trademark claim here. Similarly, Herschend's New York contacts relating to a subsidiary's management of an amusement park in New York and DPP's New York contacts relating to theatrical productions have no connection to Plaintiff's trademark claim or to *any* Dollywood activities. Because there is no "articulable nexus" or "substantial relationship" between those contacts and Plaintiff's trademark claim, such contacts cannot form the basis of specific jurisdiction under the long-arm statute. *Royalty Network*, 638 F. Supp. 2d at 423 (defendant's registration of domain name in New York had no specific relationship with plaintiff's copyright infringement claim and could not form basis for "transacting business" prong of long-arm).

Based on the foregoing, Dollywood JV's operation of the dreammoreresort.com website is not sufficient to establish specific jurisdiction over Defendants in New York under CPLR 302(a)(1). No business transactions have occurred through the website. In fact, because

Dollywood JV's resort is not yet open and will not open for several months, no business transactions *can* occur. Instead, the dreammoreresort.com website serves merely as a way to advertise the future Dollywood's DreamMore Resort in Pigeon Forge, Tennessee, to persons everywhere, some of whom happen to reside in New York. There has been no transaction of any business in New York on the site.

**3.    Defendants Are Not Subject to Personal Jurisdiction Under CPLR 302(a)(3).**

The only other section of the New York long-arm statute that could apply is CPLR 302(a)(3), which provides for specific jurisdiction when the defendant:

> Commits a tortious act without the state causing injury to person or property within the state . . . if he:
>
> (i)    regularly does or solicits business, or engages in a persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or,
>
> (ii)   expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

As shown below, Defendants' contacts with New York are insufficient under this rule as well.

First, because Dollywood's DreamMore Resort is not yet open and will not open for some time, it is difficult to fathom how Plaintiff *could* have suffered any injury resulting from Defendants' website. Clearly, Plaintiff has not lost any sales because Defendants have not made any sales or earned any revenue from use of the Dollywood's DreamMore Resort mark.

Second, *assuming arguendo*, that someone somewhere has accessed the dreammoreresort.com website and mistakenly believed that there was some connection or affiliation between the future Dollywood's DreamMore Resort and Plaintiff's Dream hotels, Defendants still do not meet the requirements of CPLR 302(a)(3).

Under CPLR 302(a)(3)(i), a defendant must regularly do or solicit business or engage in other persistent conduct in New York or derive substantial revenue from goods used or consumed or services rendered in New York. Because Defendants' resort is to be in Pigeon Forge, Tennessee, and Defendants' amusement park and water park are in Pigeon Forge, Tennessee, Defendants do not render *any* services in the state of New York. Rather, all guests must travel to ***Tennessee*** to receive any of Defendants' services. Thus, Defendants do not derive *any* revenue from rendering services in New York. Moreover, even if one were to consider Dollywood admission tickets purchased by New York residents through the dollywood.com website as services rendered "in New York," such revenues constitute less than 0.2% of Dollywood's total online ticket sales. Ross Decl. ¶ 7. This does not amount to "substantial" revenues. *See DH Servs.,* 2014 WL 496875, at * 12 (2% of defendants' donations and funding received from New York residents did not amount to substantial revenue from the state).

In addition, Defendants do not regularly do or solicit business or engage in any other persistent conduct in New York. As the court held in *DH Servs.,* "[t]hat individuals in New York can continuously access – and, in a limited way, interact with – Defendants' website is insufficient to establish § 302(a)(3)(i) jurisdiction." *Id.* at *12.

With regard to CPLR 302(a)(3)(ii), Defendants acknowledge that Dollywood JV derives substantial revenue from interstate or international commerce. Customers from throughout the United States (and the world) visit Dollywood in Tennessee and make purchases there. However, to comply with CPLR 302(a)(3)(ii), a plaintiff must also show that the defendant "expected or should reasonably have expected [its allegedly tortious act] to have consequences in" New York. Plaintiff made no allegation of any "reasonable expectation" on the part of Defendants in its Complaint. There is also no basis for finding that Defendants expected or

should reasonably have expected that the dreammoreresort.com website announcing the future Dollywood's DreamMore Resort would cause injury to anyone, let alone someone in New York.

In *Royalty Network*, this Court noted that the reasonable foreseeability requirement "requires that a 'defendant's conduct and connection with the forum state [be] such that he should reasonably anticipate being haled into court there.'" 638 F. Supp. 2d at 423-24 (citation omitted). The Court found that there should be "'tangible manifestations' of a defendant's intent to target New York, or [] 'concrete facts known to the nondomiciliary that should have alerted it' to the possibility of being brought before a court in the Southern District of New York." *Id.* at 424.

The court also found that the *Royalty Network* plaintiff failed to meet this standard. There was no evidence that the defendants had knowledge that a New York company had copyright interests in any of the music at issue in the case. The plaintiff argued that such knowledge was not necessary because the defendants should have foreseen that their sales of music on their website would cause harm in New York because the defendants purposefully targeted New York's Indian-American population. However, the court rejected this argument because there was no "'discernable (*sic*) effort to directly or indirectly serve the New York market.'" *Id.* at 424. The plaintiff's only allegations that defendants targeted the New York market were (1) the website sought to reach an Indian audience, and (2) New York was home to around fifteen percent of the Indian-American population. The court found that such allegations failed to show that the defendants could reasonably have foreseen that their website would cause harm to a copyright owner in New York. Instead, the allegations were nothing more than "'sheer speculation.'" *Id.* at 425; *see also Yash Raj Films*, 2009 WL 4891764 (plaintiff's allegations that defendants' website targeted Asian market and that twenty-five percent of Asian-Americans

lived in New York were not sufficient to show that defendants could reasonably foresee that allegedly infringing content on defendants' website would cause harm to a copyright owner in New York); *Richtone Design Grp., LLC v. Live Art, Inc.*, 2013 WL 5904975 (S.D.N.Y. Nov. 4, 2013) (defendant's website on which allegedly infringing material could be purchased was not sufficient to show that defendant could reasonably foresee causing harm to copyright owner in New York); *Forties B LLC v. Am. West Satellite, Inc.*, 725 F. Supp. 2d 428 (S.D.N.Y. 2010) (that defendants' satellite signal reached New York (as well as the rest of the United States) combined with other attenuated contacts with New York was not sufficient to show that defendants could reasonably foresee that broadcast of allegedly infringing film would cause harm to copyright owner in New York); *A.W.L.I. Grp.*, 828 F. Supp. 2d at 573-74 (mere fact that website promoting defendants' services under allegedly infringing mark could be viewed in New York did not mean that defendant reasonably expected that its allegedly tortious actions would have consequences in New York); *Pitbull Prods.*, 2008 WL 1700196, at *7 (where defendant had never sold any goods or services over its website that permitted users to download allegedly infringing content, it was not reasonably foreseeable for defendant to be subjected to jurisdiction in New York); *Bensusan Rest. Corp. v. King*, 937 F. Supp. 295, 300 (S.D.N.Y. 1996) (where defendant promoted Missouri club with name that allegedly infringed plaintiff's mark on national website that included telephone number for ordering tickets to club and had knowledge of plaintiff's restaurant in New York was not sufficient to show that defendant could reasonably foresee that website would have consequences in New York because this prong of statute "requires that a defendant make 'a discernible effort . . . to serve, directly or indirectly, a market in the forum state.'"); *Buccellati Holding*, 935 F. Supp. 2d at 626-27 (where there was no discernible effort by defendant to directly or indirectly serve New York market, defendant could not reasonably

foresee that website offering allegedly infringing products for sale would cause injury in New York).

Here, Defendants had no specific knowledge of Plaintiff's rights in the Dream mark for hotel services or of Plaintiff's location in New York when Dollywood JV adopted the Dollywood's DreamMore Resort mark for a future resort to be located in Tennessee. In addition, Dollywood JV decided to use the term "DreamMore" as part of the name of its future resort because "Dream More" was part of the "Dream More, Learn More, Care More and Be More" motto used by The Dollywood Foundation for more than twenty years and "Dream More" was part of the title of Ms. Parton's 2012 book *Dream More: Celebrate the Dreamer in You*. Given that the "DreamMore" term would be combined with the famous Dollywood mark and that the term "Dream" is used by numerous entities throughout the United States for hotels and services related to the tourism industry, Dollywood JV had no basis for believing or suspecting that its adoption of a resort name containing the term "DreamMore" would infringe anyone's rights, or, in particular, cause alleged harm to the owner of a hotel in New York. Moreover, given that Dollywood's DreamMore Resort will not open for several more months, there is *still* no basis for believing that anyone, including Plaintiff, is being harmed by Dollywood JV's promotion of its future resort. As in *Royalty Networks* and the other cases cited above, there are no "tangible manifestations" of Defendants' intent to target New York and no "concrete facts" known to Defendants that would lead Defendants to foresee being sued in New York. Accordingly, Defendants are not subject to personal jurisdiction under CPLR 302(a)(3)(ii).

**C. Assertion of Jurisdiction Over Defendants in New York Would Offend Due Process.**

As shown above, Defendants are not subject to specific jurisdiction under the New York long-arm statute. As a result, there is no need to evaluate whether assertion of jurisdiction over Defendants comports with due process. *E.g.*, *Pitbull Prods.*, 2008 WL 1700196, at *9. However, even if Defendants were arguably subject to jurisdiction under the long-arm statute, assertion of jurisdiction over Defendants in New York would violate due process.

To meet due process requirements, a defendant must have sufficient minimum contacts with New York to justify the exercise of personal jurisdiction and the assertion of personal jurisdiction over the defendant must be reasonable under the circumstances of the case. *E.g.*, *Richtone Design Grp.*, 2013 WL 5904975, at * 8 (citing *Porina v. Marward Shipping Co., Ltd.*, 521 F.3d 122, 127 (2d Cir. 2008)). These two considerations interact with one another as a "sliding scale" such that the stronger the showing of minimum contacts, the more compelling a defendant's showing that the exercise of jurisdiction would be unreasonable must be. *Id.* (citation omitted).

In *Richtone Design*, the court held that even though the defendants met the criteria for personal jurisdiction under CPLR 302(a)(1) (the "transacts business" prong) of the New York long-arm statute, the exercise of jurisdiction would violate due process. The court first found that the defendants had no property, employees, or bank accounts in New York and did not pay New York taxes. The court also found that defendants had sold approximately $1000 in Pilates paraphernalia through an online newsletter to customers in New York. The court determined that if this showing qualified as minimum contacts with New York, it was a very weak showing such that the defendants' burden to show unreasonableness was diminished. *Id.* at *9.

The court concluded that exercise of personal jurisdiction over the defendants in New York would be unreasonable. It would impose a significant burden on the defendants (residents of California, one of whom was disabled) to defend the case in New York. In addition, California had a strong interest in adjudicating the interests of its residents as they related to U.S. copyright laws. Furthermore, even though the plaintiff had an interest in obtaining its requested relief in its home state, "'that consideration [was] far from sufficient to tip the scales'- 'particularly where, as here, Defendants' contacts with New York are extremely limited.'" Therefore, exercise of jurisdiction over the defendants in New York would violate due process. *Id.* at *8.

Likewise, in *Bensusan Rest. Corp.*, the exercise of jurisdiction over a defendant was found to be in violation of due process. The defendant operated a club in Missouri under the name "The Blue Note." The plaintiff contended that such name infringed its rights in the mark "The Blue Note" for restaurant services. The defendant promoted its club on a nationally accessible website which included a phone number for making ticket orders. The court found that the defendant "ha[d] done nothing to purposefully avail himself of the benefits of New York" because he had "simply created a Web site and permitted anyone who could find it to access it." 937 F. Supp. at 301. The operation of the website site was not an act purposefully directed toward New York. There also were no allegations that the defendant had actively sought to encourage New York residents to access the site, or that he conducted any business in New York. Therefore, the defendant also could not anticipate being hauled into court in New York, and exercise of jurisdiction in New York would violate due process. *Id.; see A.W.L.I. Grp., Inc.*, 828 F. Supp. 2d at 574 (finding that assertion of personal jurisdiction in New York based on a nationwide website that promoted defendant's freight services, and allowed a user to

contact the defendant, but did not allow for any part of a transaction to occur online, would be unlikely to satisfy due process); *ISI Brands*, 458 F. Supp. 2d at 90 ("[A]bsent allegations that the defendant had actively sought to encourage New Yorkers to access [its] site, or that [it] conducted business in New York, defendant had insufficient contacts with the forum to satisfy due process.") (internal citation omitted).

Other courts have also determined that exercise of jurisdiction in a forum over an out-of-state defendant that merely promoted an out-of-state cruise or restaurant on a website accessible to residents in the forum state would violate due process. *See, e.g., Glazier Grp., Inc. v. Mandalay Corp.*, 2007 WL 2021762 (S.D. Tex. July 11, 2007) (exercise of jurisdiction in Texas over a restaurant in Las Vegas which had a nationwide website that promoted the restaurant, but did not permit booking of reservations, would not comport with due process); *Pandaw Am., Inc. v. Pandaw Cruises India Pvt. Ltd.*, 842 F. Supp. 2d 1303 (D. Colo. 2012) (exercise of jurisdiction in Colorado over Indian cruise operator which promoted cruises in India on website, but did not collect money or allow users to book cruises on site, would violate due process).

Based on the foregoing, even if Defendants were subject to personal jurisdiction in New York under one of the prongs of the New York long-arm statute, the exercise of jurisdiction over Defendants under the circumstances would violate due process. Plaintiff's claims are based on Defendants' use of the mark Dollywood's DreamMore Resort. There is nothing relating to such claims that ties Defendants to New York. Defendants have not purposefully availed themselves of any benefits under New York law in connection with Dollywood's DreamMore Resort. Defendants have not specifically targeted any residents in New York in connection with Dollywood's DreamMore Resort. Moreover, because the Resort is not yet open, no one can make reservations at the resort. The fact that Dollywood JV promotes Dollywood's DreamMore

Resort on a website is not sufficient to support the exercise of jurisdiction over Defendants in this case.

## IV.   CONCLUSION

For the reasons set forth above, Defendants are not subject to general personal jurisdiction in New York and are not subject to specific personal jurisdiction in New York on the claims asserted against them in this civil action under any of the three prongs of the New York long arm statute. Consequently, Defendants' Motion should be granted and this action should be dismissed.

Dated:  New York, New York
       December 23, 2014

SMITH, GAMBRELL & RUSSELL, LLP

By:  _John G. McCarthy_
     John G. McCarthy

1301 Avenue of the Americas, 21st Floor
New York, New York 10019
Tel: (212) 907-9700
Fax: (212) 907-9800
jmccarthy@sgrlaw.com

- and -

J. Rodgers Lunsford III (*pro hac vice* to be filed)
SMITH, GAMBRELL & RUSSELL, LLP
Promenade, Suite 3100
1230 Peachtree St., N.E.
Atlanta, Georgia 30309
Tel: (404) 815-3500

*Attorneys for Defendants*
*The Dollywood Company, Herschend Family*
*Entertainment Corporation, and Dolly Parton*
*Productions, Inc.*